```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

FIRST TENNESSEE BANK NATIONAL  )
ASSOCIATION,                   )
                               )
        Plaintiff,             )
                               )
vs.                            )    No.  07-2664-BV
                               )
PACIFIC AMERICA GROUP,INC.     )
d/b/a PACIFIC AMERICA MORTGAGE;)
WILLIAM OWEN; NANCY OWEN; HO   )
SANG (PETER) YIM; AND DANNY    )
PARK,                          )
                               )
        Defendants.            )
_____

           REPORT AND RECOMMENDATION ON PLAINTIFF'S
  COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY
                           INJUNCTION
_____

Before the court is the October 18, 2007 complaint of the plaintiff, First Tennessee Bank National Association ("First Tennessee"), seeking a temporary restraining order ("TRO") and a preliminary injunction enjoining and restraining the defendants, Pacific America Group, Inc. d/b/a Pacific America Mortgage ("PAM"), William Owen ("W. Owen"), Nancy Owen ("N. Owen"), Ho Sang (Peter) Yim ("Yim"), and Danny Park ("Park") (collectively "the Defendants"), and those acting in concert with the Defendants, in order to (1) prevent them from interfering with First Tennessee's

rights with respect to the PAM Borrowers[1] pursuant to the Mortgage Warehouse Loan and Security Agreement (the "Warehouse Agreement") and the Master Promissory Note (the "Note"); (2) prevent them from transferring, spending, and otherwise disposing of any and all payments of collections received from the PAM Borrowers; and (3) to direct them to remit or cause to be remitted to First Tennessee all payments or collections received from the PAM Borrowers. None of the Defendants filed a written response to First Tennessee's request for a TRO and a preliminary injunction. The request was referred to the United States Magistrate Judge for a report and recommendation.

A hearing was held on November 14, 2007. None of the Defendants appeared at the hearing. For the reasons that follow, it is recommended that the plaintiff's request for a TRO and a preliminary injunction be granted.

PROPOSED FINDINGS OF FACT

First Tennessee is a national banking association partly in the business of commercial lending. PAM is a secondary mortgage lender that sought to re-lend the funds borrowed from First Tennessee to qualified borrowers under terms and conditions set

---

[1] Cindy Yang (aka Cindy Cindy), Oscar Cuin (aka Oscar C. Casimoro and Oscar C. Cuin Casimoro), and Martha Sonia Pineda-Polanco are collectively referred to as the "PAM Borrowers."

forth in the Warehouse Agreement.  On or about January 1, 2007, First Tennessee entered the Warehouse Agreement with PAM, whereby First Tennessee would advance to PAM funds not to exceed an aggregate amount in excess of $12,000,000.  PAM contemporaneously executed the Note evidencing its obligations.  In order to induce First Tennessee to make the loan to PAM, W. Owen, N. Owen, Yim, and Park executed a Guaranty Agreement on January 18, 2007, agreeing to repay the indebtedness owed to First Tennessee in the event of a default by PAM.

Defendants W. Owen, Park, and Yim at all times maintained an ownership interest in PAM.  In addition, W. Owen served as President of PAM, Park served as Vice President of PAM, and Yim represented himself as having authority to act on behalf of PAM.

Pursuant to the terms of the Note, Warehouse Agreement, and Guaranty Agreement, PAM requested that First Tennessee advance to it funds totaling in excess of $2.4 million for the purpose of re-lending those funds to qualified borrowers of PAM.  The PAM Borrowers subsequently entered into various mortgage agreements with PAM and received funds from First Tennessee's advance to PAM.

The Note matured on June 30, 2007.  Though the entire balance was due on that date, PAM has failed to make the required payments under the Note and the Warehouse Agreement.  At the hearing, Blake

Hauk ("Hauk"), Vice President of First Tennessee, testified that $2,386,911.23 is due and owing under the terms of the Note. Pursuant to and as a result of the Defendants' default on the Note, Warehouse Agreement, and Guaranty Agreement, First Tennessee has the right to take and receive all payments due to PAM under its promissory notes, mortgages, and other documentation evidencing or otherwise relating to PAM's loans to the PAM Borrowers - all of which serve as collateral for First Tennessee's loan to PAM. First Tennessee notified the PAM Borrowers to pay their obligations to First Tennessee rather than PAM. Prior to these notices, PAM had received all payments under the promissory notes. PAM has not delivered these payments to First Tennessee.

First Tennessee argues that it is entitled to a TRO and a preliminary injunction against the Defendants because PAM has neglected to deliver payments to First Tennessee pursuant to and as a result of the Defendants' default on the Note. In support of its argument, First Tennessee contends that it has demonstrated a likelihood of success on the merits; that irreparable injury, loss, or damage will result to First Tennessee if a preliminary injunction is not issued; that First Tennessee would suffer more harm from the denial of a preliminary injunction order than the Defendants would suffer from its issuance; and that public interest would be served by the issuance of the preliminary injunction

4

order. As previously stated, none of the Defendants appeared at the hearing.

PROPOSED CONCLUSIONS OF LAW

A preliminary injunction is "an extraordinary and drastic remedy" which should be granted with great caution. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948, 129-30 (2d ed. 1995)). When faced with a motion for a preliminary injunction, the district court must consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction upon the public interest. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001). These factors are not prerequisites that must be satisfied before a court can issue a preliminary injunction; therefore, no single factor will be determinative of the granting or the denial of an injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). Rather, the district court should balance all four factors in determining whether to grant or deny the

5

injunction. *Id.*

It is recommended that the request for a TRO and a preliminary injunction be granted because all four factors to be weighed by the court support entry of a TRO and a preliminary injunction.

A.  <u>Likelihood of Prevailing on the Merits</u>

First Tennessee has shown that it is likely to prevail on the merits of its breach of contract claim in this case. First Tennessee has provided valid copies of the signed Warehouse Agreement, Note, and Guaranty Agreement. (*See* Compl. Ex.'s A, B, C.) At the hearing, Hauk testified that PAM owes First Tennessee over $2.3 million and that the Note is in default. First Tennessee rightly has an interest in the payments made to PAM relating to the mortgages to the PAM Borrowers. (Compl. Ex. C at ¶ 2.8.1.12.) Because PAM has breached its contract with First Tennessee by refusing to deliver these payments, First Tennessee is likely to prevail on the merits of its breach of contract claim.

B.  <u>Irreparable Harm to the Plaintiffs</u>

First Tennessee has shown that it will likely suffer irreparable harm if PAM is not ordered to deliver the payments made by the PAM Borrowers. First Tennessee would be irreparably harmed by the potential loss of the collateral securing the loan to PAM, and it may suffer future economic losses in the event that PAM or

6

the other defendants are unable to pay the debt owed to First Tennessee. Furthermore, First Tennessee would suffer irreparable harm if PAM is allowed to continue to improperly collect, dispose of, and misappropriate the proceeds from First Tennessee's collateral.

C.  Substantial Harm to Others

The Defendants will suffer only limited harm by the entry of a preliminary injunction that prohibits them from collecting payments that are properly due to First Tennessee under the terms of the Note, Warehouse Agreement, and Guaranty Agreement. In the Warehouse Agreement, PAM agreed to grant First Tennessee a security interest in each of the mortgage notes that was funded with an advance from First Tennessee. (Compl. Ex. C at ¶¶ 2.8.1, 2.8.1.1.) That agreement provided that First Tennessee was entitled to any payments made pursuant to mortgage notes in the event of a default by PAM. (Compl. Ex. C at ¶ 2.8.1.12.) PAM brought the default upon itself by failing to make payments properly due under the Note. Courts have considered whether the harm was self-inflicted in determining whether to issue a preliminary injunction. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992). Here, the harm that PAM will suffer by the loss of payments is self-inflicted through its default on the Note.

**D.   Impact on the Public Interest**

Finally, applicable law establishes a "strong public policy in favor of upholding contracts." *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993). Here, there is no evidence in the record to suggest that the Note, Warehouse Agreement, and Guaranty Agreement are not valid, enforceable contracts entitled to be upheld. It serves the public interest that the contracts between First Tennessee and the Defendants be upheld.

Accordingly, it is recommended that the request for a TRO and a preliminary injunction be granted.

## CONCLUSION

It is recommended that the request for a TRO and a preliminary injunction should be granted. It is submitted that the Defendants should be temporarily restrained and preliminarily enjoined from interfering with First Tennessee's rights with respect to the PAM Borrowers pursuant to the Note and Warehouse Agreement, and from transferring, spending, and otherwise disposing of any and all payments of collections received from the PAM Borrowers. In addition, it is submitted that the court should direct the Defendants to remit or cause to be remitted to First Tennessee all payments or collections received from the PAM Borrowers.

Furthermore, it is submitted that the court should direct PAM to cause notice of and a copy of the final order granting a TRO and a preliminary injunction to be served upon the PAM Borrowers within ten (10) days of issuance, along with notice to the PAM Borrowers that all payments due under the mortgage loans are to be made directly to First Tennessee at the appropriate address. Lastly, it is submitted that the court order the Defendants to immediately remit to First Tennessee any and all payments that have been received from the PAM Borrowers by any of the Defendants since August 10, 2007, the date on which the Defendants were notified of PAM's default.

Respectfully submitted this 20th day of November, 2007.

 s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE